**In the United States District Court
for the District of Kansas**

---

Case No. 21-cv-02010-TC-TJJ

---

ANTHONY J. HAMPTON,

*Plaintiff*

v.

BAKERY, CONFECTIONARY & TOBACCO WORKERS AND GRAIN MILLERS INTERNATIONAL UNION OF AMERICA, LOCAL 218, AFL-CIO,

*Defendant*

---

**MEMORANDUM AND ORDER**

Plaintiff Anthony J. Hampton sued his former union, Bakery, Confectionary & Tobacco Workers and Grain Millers International Union of America, Local 218, AFL-CIO, for breaching its duty of fair representation under 29 U.S.C. § 185 and for discrimination under 42 U.S.C. § 1981. Doc. 1. The Union moved to dismiss both claims for failure to state a claim under Fed. R. Civ. P. 12(b)(6). Docs. 4 & 5. The motion is granted for the following reasons.

**I**

**A**

To survive a motion to dismiss for failure to state a claim, the complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief" from each named defendant. Fed. R. Civ. P. 8(a); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The Tenth Circuit has summarized two "working principles" that underlie this standard. *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). First, the Court ignores legal conclusions, labels, and any formulaic recitation of the elements. *Kan. Penn Gaming*, 656 F.3d at 1214. Second, the Court accepts as true all remaining allegations and

logical inferences and asks whether the claimant has alleged facts that make his or her claim plausible. *Id.*

A claim need not be probable to be considered plausible. *Iqbal*, 556 U.S. at 678. But the facts viewed in the light most favorable to the claimant must move the claim from merely conceivable to actually plausible. *Id.* at 678–80. The "mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).

Plausibility is context specific. The requisite showing depends on the claims alleged, and the inquiry usually starts with determining what the plaintiff must prove at trial. *See Comcast Corp. v. Nat'l Assoc. of African Am.-Owned Media*, 140 S. Ct. 1009, 1014 (2020). The nature and complexity of the claim(s) define what plaintiffs must plead. *Cf. Robbins v. Oklahoma*, 519 F.3d 1242, 1248–49 (10th Cir. 2008) (comparing the factual allegations required to show a plausible personal injury claim versus a plausible constitutional violation).

**B**

Anthony Hampton was a production employee for Frito-Lay in Topeka, Kansas, for over eight years. Doc. 1 at ¶ 4. He is African American. *Id.* After an October 2018 workplace dispute with a coworker, Frito-Lay suspended and, later, terminated Hampton's employment. *Id.* at ¶¶ 12, 26.

This case centers on that dispute. According to Hampton, another Frito-Lay employee from a different department, George Kistler, frequently made unwelcome visits to Hampton during work. Doc. 1 at ¶¶ 6–7. In those visits, Kistler "expressed offensive and inflammatory comments and opinions" to Hampton. *Id.* at ¶ 8. Hampton claims that this behavior created a racially intimidating, hostile, and offensive work environment. *Id.* One such visit escalated to the point that Frito-Lay's human resources department got involved. *Id.* at ¶¶ 9–11. A week after that incident, Frito-Lay suspended Hampton without pay and launched an investigation. *Id.* at ¶ 12.

During its investigation, Frito-Lay interviewed both Hampton and Kistler. Doc. 1 at ¶¶ 18–19. Hampton said that he merely asked Kistler

to leave. *Id.* at ¶ 9. But Kistler told a Frito-Lay investigator that Hampton "used profanity toward him" and "made physical contact with him." *Id.* at ¶ 18. Two coworkers supported Kistler's version in written statements. *Id.* at ¶¶ 19–20. Based on the coworkers' statements and Kistler's, Frito-Lay determined that Hampton had violated the company's policy against workplace violence. *Id.* at ¶ 20.

On November 1, 2018, Frito-Lay (through the Union, with whom it had a collective bargaining agreement) offered Hampton a severance agreement. Doc. 1 at ¶ 22. The offer did not mention the coworkers' statements in support of Kistler's story. Under the agreement, Hampton would not need to return to work and would retain employee benefits and eligibility for pension benefits. *Id.*

Meanwhile, the Union investigated the grievance Hampton filed with Frito-Lay over his suspension. *Id.* at ¶ 12. Two weeks after offering the severance agreement, Frito-Lay responded to the Union's request for information. *Id.* at ¶ 24. The response included the coworkers' statements. *Id.* The Union did not share what it had learned with Hampton. Nor did the Union advise Hampton on whether he should sign the severance agreement. Doc. 10 at 13–14; *see also* Doc. 1 at ¶¶ 12, 18–25. Ultimately, Hampton declined to sign the agreement. He was soon terminated for violating the Frito-Lay's Topeka Plant Work Rules. *Id.* at ¶¶ 25–26. Hampton now claims that had the Union informed him about the coworkers' statements or advised him to sign the severance agreement, he would have signed it and would still have access to his pension. Doc. 1 at ¶¶ 25, 35.

Shortly after his termination, Hampton filed another grievance with Frito-Lay. Doc. 1 at ¶ 27. Hampton, Union representatives, and Frito-Lay's plant processing manager met to discuss the grievance. *Id.* at ¶ 28. A month later, Frito-Lay denied his grievance. *Id.* at ¶ 29. The denial letter stated that "there were no subsequent findings to overturn the termination." *Id.*

Hampton then turned to the courts. Before this current suit, he sued Frito-Lay and Kistler, alleging racial discrimination under 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* Doc. 1 at ¶ 33. During discovery in that suit, Hampton first learned of the coworkers' statements that supported Kistler's story. *Id.* at ¶ 34. The parties settled. *Id.* at ¶ 35.

Now, Hampton's current suit seeks recovery from the Union in its capacity as his representative. Doc. 1 at ¶¶ 4–5, 13, 22. Hampton contends that the Union failed to provide him with critical information relevant to his decision to sign the severance agreement: the details of Frito-Lay's investigation and the corroborating statements. *Id.*

Hampton asserts two legal theories. In Count I, Hampton claims that the Union breached its duty of fair representation by acting in bad faith and in an arbitrary and racially discriminatory manner. *Id.* at ¶ 37. While the Complaint does not expressly cite any provision or body of law, the parties' briefing relies on a series of labor-relations cases applying 29 U.S.C. § 185. Doc. 10 at 3–4; *see DelCostello v. Int'l Brotherhood of Teamsters*, 462 U.S. 151, 163–64 (1983); *Vaca v. Sipes*, 386 U.S. 171, 177 (1967). In Count II, Hampton claims that the Union engaged in racial discrimination in violation of 42 U.S.C. § 1981 because it impaired his right to make and enforce a contract: the severance agreement.

The Union moved to dismiss both claims. Doc. 4. For the duty of fair representation claim, the Union argues that a six-month statute of limitations bars the claim. Doc. 5 at 17–20. Alternatively, the Union argues that Hampton failed to show that the Union acted with bad faith or in an arbitrary manner. *Id.* at 20–24. As to racial discrimination, the Union argues that Hampton has failed to show an intent to discriminate or that any discrimination interfered with his right to make or enforce a contract. *Id.* at 14–16.

## II

For both counts, Hampton's Complaint lacks sufficient facts showing that he is entitled to relief. As a result, the Union's Motion to Dismiss both counts for failure to state a claim is granted.

### A

A union has a duty of fair representation when representing its members in a grievance or arbitration procedure. *DelCostello v. Int'l Brotherhood of Teamsters*, 462 U.S. 151, 163–64 (1983) (noting that the duty is implied under the National Labor Relations Act). A union breaches its duty of fair representation when it acts in a "discriminatory, dishonest, arbitrary, or perfunctory" way when representing an employee in a grievance or arbitration procedure. *Id.* at 1239 (citing *Int'l Brotherhood of Elec. Workers v. Hechler*, 481 U.S. 851, 864 n.6 (1987)).

4

To prevail against a union on a fair representation claim, an employee must *also* show that his discharge was contrary to the collective bargaining agreement between the employer and union. *Id.* at 165. This element comes from 29 U.S.C. § 185 and is often called a "Section 301" action (from the corresponding section in the Labor Management Relations Act). A Section 301 action is essentially a breach of contract suit. *Webb v. ABF Freight Sys., Inc.*, 155 F.3d 1230, 1238 (10th Cir. 1998). Because of the dual nature of these fair representation suits—the Section 301 prong and the arbitrary/dishonest prong—they are sometimes called "hybrid" actions. *DelCostello*, 462 U.S. at 165. To state such a claim, a plaintiff must allege that (i) the union engaged in some conduct that constituted a breach of its duty of fair representation, (ii) there is a causal connection between the union's breach and the integrity of the grievance process, and (iii) the employer violated the collective bargaining agreement. *Webb*, 155 F.3d at 1238. Here, the Union claims that Hampton has not shown the first and third elements.[1]

**1.** The Complaint fails to state a claim that the Union breached its duty of fair representation. Hampton argues that the Union acted in bad faith and that its conduct was arbitrary and discriminatory. But his complaint alleges few facts about the Union's involvement in Hampton's grievance process with Frito-Lay. Doc. 5 at 20–24. Without additional facts, his claim rests on the Union's knowledge of the corroborating statements and its decision not to volunteer that information to Hampton and advise accordingly. This is not enough to suggest arbitrary, discriminatory, or bad-faith conduct.

First, Hampton fails to allege facts plausibly showing that the Union acted arbitrarily. Specifically, Hampton argues that the Union's silence regarding the coworker statements was arbitrary. Doc. 10 at 7. To be arbitrary, an action must be "so far outside of a wide range of

---

[1] Defendant also argues this claim is time-barred by the six-month statute of limitations for fair representation claims. Doc. 5 at 17–20; *see DelCostello*, 462 U.S. at 164–65. The clock begins when an employee knows of "the acts constituting the union's alleged violations." *Spaulding v. United Transp. Union*, 279 F.3d 901, 908 (10th Cir. 2002). The parties here disagree on when Hampton's claim accrued: when the Union failed to provide the information during the grievance process, Doc. 5 at 19, or when Hampton later received the information during his suit against Frito-Lay and Kistler, Doc. 1 at ¶ 34, Doc. 10 at 12. Resolving that issue is unnecessary because Hampton's claim fails as a matter of law on other grounds.

reasonableness . . . that it is wholly irrational." *Air Line Pilots Ass'n. v. O'Neill*, 499 U.S. 65, 78 (1991). Hampton has not pled other facts for his belief that the Union's lack of advice was wholly irrational. *See* Doc. 1 at ¶ 25. Instead, he argues that giving "no advice" is like giving irrational advice. Doc. 10 at 7. The Union concedes its conduct may have been "negligent and in poor judgment." Doc. 5 at 22–23. But "errors in judgment" and "mere negligence" are not enough to show a breach of the duty of fair representation." *Young v. United Auto. Workers Lab. Emp. & Training Corp.*, 95 F.3d 992, 997 (10th Cir. 1996) (citations omitted).

Related to arbitrariness, Hampton argues that the Union acted in a perfunctory manner. Doc. 10 at 7–8. "Perfunctory," in this context, means "without concern or solicitude." *Webb*, 155 F.3d at 1240. It describes conduct that gives only "cursory," "apathetic," or "indifferent" attention. *Id.* Here, Hampton's only factual support is the Union's silence regarding the coworker statements. Doc. 10 at 8. This is not enough. *See Naughton v. Loc. 804 Union*, No. 18-2830, 2019 WL 1003054 (E.D.N.Y. Mar. 1, 2019) (holding union's failure to produce documents to employee was not a breach of the duty of representation because the failure was an internal issue between union and employee); *Weller v. AT&T Servs., Inc.*, No. 10-80480, 2011 WL 2215165 (S.D. Fla. June 7, 2011) ("The failure of a union to provide a plaintiff with *requested* documents does not rise to the level of a breach of the duty of fair representation." (emphasis added)). Furthermore, the Complaint does not allege that Hampton sought the investigation's details or the Union's advice on the severance agreement. The Complaint does allege, however, that the Union investigated Hampton's suspension, requested information from Frito-Lay, and represented Hampton even after it learned of evidence against him. Doc. 1 at ¶¶ 23, 28. That is not "arbitrarily ignor[ing] a meritorious grievance or process[ing] it in perfunctory fashion." *Webb*, 155 F.3d at 1239; *see also Young*, 95 F.3d at 996–97 (10th Cir. 1996) (affirming that defendant union did not act arbitrarily because it pursued plaintiff's grievance and arbitration and represented plaintiff fairly throughout the processes).

Second, Hampton has not adequately alleged that the Union's conduct was discriminatory. There are no facts suggesting that its representation was racially motivated or that Hampton was treated differently than similarly situated employees. *See Richardson v. Bakery, Confectionary & Tobacco Workers, Loc. No. 26*, 92 F.3d 1197 (10th Cir. 1996); *see also, e.g.*, *Henderson v. Int'l Union*, 263 F. Supp. 2d 1245, 1293 (D. Kan.

2003) (finding no discriminatory conduct where plaintiff did not allege similarly situated, non-minority members were treated more favorably). Hampton points to the Union's "lack of explanation" for not advising Hampton. Doc. 10 at 14. But no explanation is needed where Hampton has not established a prima facie case of discrimination. *Cf. Perry v. Woodward*, 199 F.3d 1126, 1135 (10th Cir. 1999) (applying *McDonnell Douglass* burden-shifting framework). Hampton's only race-related fact is that he is African American. But nothing in the Complaint suggests that the Union had a racial motive or that Hampton was treated differently than similarly situated employees. Indeed, the Complaint provides no information about Kistler or the coworker witnesses' races or ethnicities, precluding a claim that the Union favored non-African Americans because of their race or ethnicity.

Finally, the Complaint fails to show that the Union acted in bad faith. To establish bad faith, plaintiffs must present evidence of fraud, deceitful action, or dishonesty. *Mock v. T.G. & Y. Stores Co.*, 971 F.2d 522, 531 (10th Cir. 1992) (citing *Motor Coach Employees v. Lockridge*, 403 U.S. 274, 299 (1971)). Hampton argues that the Union acted in bad faith because its fiduciary duty required disclosure of all material facts of which it knew. Doc. 10 at 8–9 (citing *Air Line Pilots*, 499 U.S. at 75) and Restatement (Second) of Trusts § 170). "[T]o determine what the plaintiff must plausibly allege at the outset of a lawsuit, we usually ask what the plaintiff must prove in the trial at its end." *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 140 S. Ct. 1009, 1014 (2020). Here, the Complaint lacks *any* allegations that the Union engaged in fraudulent, deceitful, or dishonest behavior. *Cf. Reid v. Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am.*, 479 F.2d 517, 519 (10th Cir. 1973) (affirming summary judgment for the union because there were "no facts establishing discrimination, fraud or dishonesty").

**2.** The Complaint also fails to plead the third element of a hybrid Section 301/fair representation action—that Frito-Lay breached the collective bargaining agreement when it discharged Hampton. The parties' briefs do not detail what would constitute a breach of the collective bargaining agreement. Hampton argues that it is enough that the collective bargaining agreement prohibited discrimination and that he sued Frito-Lay for racial discrimination. Doc. 1 at ¶¶ 14, 31, 33; Doc. 10 at 10. The Union argues that the Complaint is "entirely silent" about whether Frito-Lay breached the agreement. Doc. 5 at 24.

To state a plausible claim, Hampton needed to support his position with more than just general, conclusory allegations. *See Jara v. Standard*

7

*Parking*, 701 F. App'x 733, 737 (10th Cir. 2017) (affirming that a mere assertion that the employer "violated various provisions of the collective bargaining agreement" without supporting facts is insufficient to state a claim). He has not done so. Thus, Hampton's claim for breach of duty of fair representation is dismissed.

## B

Hampton's second claim alleges that the Union discriminated against him based on his race by impairing his right to contract in violation of 42 U.S.C. § 1981. Specifically, he points to the Union's failure to advise him that his coworkers' statements corroborated Kistler's story of the incident. As a result, Hampton argues, he declined to sign Frito-Lay's proposed severance agreement. Doc. 1 at ¶ 41.

Section 1981 prohibits discriminatory interference with an individual's right to make and enforce contracts. To bring a claim, a plaintiff must show that (i) he is a member of a protected class, (ii) the defendant intended to discriminate on the basis of race, and (iii) the alleged discrimination interfered with a protected activity. *Hampton v. Dillard Dep't Stores, Inc.*, 247 F.3d 1091, 1101–02 (10th Cir. 2001). A plaintiff bears the burden of alleging that "race was a but-for cause of its injury." *Comcast Corp.*, 140 S. Ct. at 1014. Thus, a complaint must plausibly allege facts that could meet this requirement. *Id.*

Hampton has not plausibly alleged but-for causation. Other than stating that he is African American, the Complaint is devoid of factual allegations that the Union treated Hampton differently from similarly situated employees based on his race. Indeed, the only time race is mentioned in conjunction with Union conduct is where Hampton conclusorily recites his claim. Doc. 1 at ¶ 41. Bald claims of race discrimination, without factual support, are not enough. *See Jara*, 701 F. App'x at 736 (affirming union member had not pled a § 1981 prima facie case where he alleged only that he believed the union's actions were race-based but provided no additional allegations to show discriminatory intent); *see also Watkins v. Genesh*, Case No. 19-2486, 2021 WL 1238270, at *3 (D. Kan. Apr. 2, 2021) (dismissing complaint that pled no factual allegations other than plaintiff's race); *Norwood v. United Parcel Serv., Inc.*, No. 19-2496, 2020 WL 5802078, at *16 (D. Kan. Sept. 29, 2020) (dismissing complaint that pled no factual allegations other than the race of plaintiff's relative).

8

Furthermore, the timing of events leading up to Hampton's termination does not suggest discriminatory intent. *Contra* Doc. 10 at 13–14. In particular, he points to the following sequence of events: his suspension after the incident with Kistler, the investigation in which the coworker statements were obtained, the severance offer, the Union's failure to apprise him of the corroborating statements, and the Union's failure to advise him to sign the severance. Doc. 10 at 13–14. It is true that the timing of events leading to an adverse action can provide indirect evidence of discriminatory intent for § 1981 actions. *See Barlow v. C.R. England, Inc.*, 703 F.3d 497, 505 (10th Cir. 2012) (citing *Plotke v. White*, 405 F.3d 1092, 1101 (10th Cir. 2005)). But timing alone is insufficient without some facts to suggest that the adverse action was racially motivated. *Cf. Plotke*, 405 F.3d at 1103–04 (noting conflicting evidence concerning the reasons for an adverse action *in addition to* conflicting evidence regarding the timing of the action supported a prima facie Title VII gender discrimination case). Because Hampton has not pled such factual support, his § 1981 claim fails.

### III

The Union's Motion to Dismiss for failure to state a claim is GRANTED. Hampton has not alleged sufficient facts in his complaint to demonstrate that he is entitled to relief under 29 U.S.C. § 185 or 42 U.S.C. § 1981.

It is so ordered.

Date:  October 22, 2021          s/ Toby Crouse
                                 Toby Crouse
                                 United States District Judge